J-A18019-23

2023 PA Super 167

IN RE: N.J.B., AN ALLEGED    :   IN THE SUPERIOR COURT OF
INCAPACITATED PERSON    :       PENNSYLVANIA
                             :
                             :
APPEAL OF: J.P.B.            :
                             :
                             :
                             :
                             :   No. 189 WDA 2023

Appeal from the Order Entered January 13, 2023
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  65-22-1551

BEFORE:  BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

OPINION BY LAZARUS, J.:          **FILED: September 15, 2023**

J.P.B. ("Father") appeals from the order, entered in the Court of Common Pleas of Westmoreland County, Orphans' Court Division, dismissing his petition to adjudicate his 24-year-old daughter, N.J.B., incapacitated and to appoint a limited guardian of her person.  After careful review, we affirm.

On July 6, 2022, Father filed the above-referenced petition for adjudication of incapacity.  In the petition, Father averred that N.J.B. has Down Syndrome, an I.Q. of 51, and is "unable to receive and evaluate information effectively and communicate decisions to such a significant extent that she is totally unable to manage her financial estate or to meet essential requirements for her physical health and safety."  Petition for Adjudication of Incapacity, 7/6/22, at ¶ 7.  Father further alleged that Appellee, N.J.B.'s mother, H.U.B. ("Mother"), is "unduly influencing [N.J.B.] regarding [Father's] periods of custody with [N.J.B.]" and has refused to permit Father to exercise

his custody rights as to N.J.B. since his remarriage in July 2021.[1]  ***Id.*** at ¶ 8.

Father averred that "[N.J.B.'s] mental limitations and the undue influence by

[Mother] necessitate that a Limited Guardian of the Person be appointed for

all issues relating to [N.J.B.'s] contacts with her Father."  ***Id.*** at ¶ 10.

On July 6, 2022, the court appointed counsel for N.J.B.[2]  On August 26,

2022, Mother filed preliminary objections to Father's petition for adjudication

of incapacity.[3]  In her preliminary objections, Mother asked the court to strike

numerous allegations that were impertinent, immaterial, and scandalous.  She

also argued that, pursuant to 20 Pa.C.S.A. § 5511(a), "[t]he court may

dismiss a proceeding where it determines that the proceeding has not been

instituted to aid or benefit the alleged incapacitated person or that the petition

---

[1] Although N.J.B. is now an adult, Father alleged that he and Mother had continued to comply with a Custody Consent Agreement entered by the court in July 2012.

[2] Following the court's appointment of counsel for N.J.B., on July 20, 2022, Jason C. Kelly, Esquire filed an entry of appearance on behalf of N.J.B., followed by preliminary objections.  On August 23, 2022, Father filed a motion to deny Attorney Kelly's entry of appearance on the basis that Attorney Kelly had previously represented Mother in a protection from abuse matter filed against Father.  That same day, the court issued an order granting the motion and ordering that N.J.B. be represented by court-appointed counsel, Patricia Elliott-Rentler, Esquire.  ***See*** Order, 8/23/22.

[3] Pursuant to the Pennsylvania Rules of Orphans' Court Procedure, responsive pleadings to a petition for adjudication of incapacity are permitted in accordance with Pa.R.O.C.P. 3.6 (stating that pleadings allowed after filing of petition include, *inter alia*, preliminary objections) and may be filed by "the alleged incapacitated person and any person or institution served pursuant to Rule 14.2(f)(2) [(requiring service of petition upon, *inter alia*, the alleged incapacitated person's intestate heirs)]."  Pa.R.O.C.P. 14.2(f)(2).

is incomplete or fails to provide sufficient facts to proceed." Preliminary Objections, 8/26/22, at ¶ 43. Mother asserted that the petition "has clearly been brought not for the aid and benefit of [N.J.B.], but to gratify [Father's] own desire to interact with [N.J.B.], an adult over whom [Father] has no legal claim[.]" *Id.* at ¶ 44. Father filed a response to Mother's preliminary objections, and the court ordered both parties to submit briefs. Following oral argument, the court struck numerous averments contained in Father's petition and also concluded that,

> [r]egardless of any diagnosis, there is no indication in the petition that [N.J.B.'s] needs are not being met or that she is in need of additional assistance in caring for her person. Instead, the petition appears to [have been] filed by [Father] as a means to attempt to facilitate visits with his adult daughter.

Orphans' Court Order, 1/13/23, at 4. Accordingly, the court dismissed the petition pursuant to section 5511(a), "where the petition clearly was not instituted to benefit [N.J.B.] and . . . lacks the required assertions that [N.J.B.'s] needs are not being met[.]" *Id.*

Father filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He raises the following claims for our review:

> 1. Whether the [Orphans' Court] erred as a matter of law in dismissing [Father's] petition upon preliminary objections, without any hearing or independent evaluation, despite the requirements of [sections] 5511 and 5512.1(a) and (b) and related authority, and based upon the unreasonable inference that [Father] did not bring this action to aid and benefit N.J.B.
>
> 2. Whether the [Orphans' Court] erred in striking averments set forth in paragraphs 8, 9, and 10 of the incapacity petition, setting

forth allegations of undue influence, [Mother's] direction to N.J.B. to file a protection from abuse action against [Father], and custodial contact between [Father] and N.J.B. as impertinent.

Brief of Appellant, at 8 (reordered for ease of disposition; unnecessary capitalization omitted).

Our standard and scope of review of a court's order sustaining preliminary objections are as follows:

> Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. The test on preliminary objections is whether it is clear and free from doubt from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his right to relief. To determine whether preliminary objections have been properly sustained, this court must consider as true all of the well-pleaded material facts set forth in appellant's complaint and all reasonable inferences that may be drawn from those facts.

***Chester County Children and Youth Services v. Cunningham***, 636 A.2d 1157, 1158 (Pa. Super. 1994) (internal citations omitted). "[P]reliminary objections in the nature of a demurrer require the court to resolve issues solely on the basis of the pleadings, and no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented." ***McNaughton Properties, LP v. Barr***, 981 A.2d 222, 224 (Pa. Super. 2009). "This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion." ***Clemleddy Const., Inc. v. Yorston***, 810 A.2d 693, 696 (Pa. Super. 2002).

Father first claims that the Orphans' Court erred in dismissing his petition on preliminary objections, without any hearing or independent

evaluation, despite the requirements of sections 5511 and 5512.1(a) and (b) and related authority, and based upon the "unreasonable inference" that Father did not bring this action to aid and benefit N.J.B. Brief of Appellant, at 27. Father is entitled to no relief.

As stated above, section 5511 provides that "[t]he court may dismiss a proceeding where it determines that the proceeding has not been instituted to aid or benefit the alleged incapacitated person or that the petition is incomplete or fails to provide sufficient facts to proceed." 20 Pa.C.S.A. § 5511(a). The statute does not require that a hearing be held before such a finding may be made by the court.[4] *See id.*

Here, Father's petition was abundantly transparent that its only purpose was "to attempt to facilitate visits with his adult daughter." Orphans' Court Order, 1/13/23, at 4. Indeed, Father did not request that a limited guardian of the person be appointed to "assist [N.J.B.] in meeting the essential requirements for [her] physical health and safety, protect[ her] rights, . . . [or] develop[] or regain[ her] abilities to the maximum extent possible[.]" 20 Pa.C.S.A. § 5502 (setting forth purpose of guardianship statute). Rather, Father's request for a guardianship was limited to "**issues relating to**

---

[4] As Mother aptly notes in her brief, if an evidentiary hearing were required in all guardianship proceedings, the rules permitting the filing of preliminary objections to guardianship petitions would be superfluous. *See* Pa.R.O.C.P. 3.6, 3.9, and 14.1(b)(1).

**[N.J.B.'s] contacts with her Father.**"[5]  Petition for Adjudication of Incapacity, 7/6/22, at ¶ 10 (emphasis added).

Moreover, Father did not aver in his petition that N.J.B.'s needs were not currently being appropriately met, or that she was in need of guardianship services for any reason other than to facilitate the exercise of Father's purported custodial rights.  A court may not proceed to the appointment of a guardian in the absence of evidence that an individual is in need of guardianship services, even if the individual is, in fact, incapacitated.  *In re Peery*, 727 A.2d 539, 540 (Pa. 1999) (affirming dismissal of guardianship petition where services already available to alleged incapacitated person met essential requirements for physical health and safety).  Accordingly, Father's petition was legally insufficient to support a finding that N.J.B. is in need of a guardian.

N.J.B. is an adult who, despite her limitations, "enjoys many of the same rights and privileges enjoyed by other adult citizens[, including] a constitutionally protected freedom of choice to make certain basic decisions regarding marriage, procreation, family life[,] and privacy."  *Schmidt v. Schmidt*, 459 A.2d 421, 422 (Pa. Super. 1983) (holding 26-year-old woman with Down Syndrome, having mental ability of child, cannot be compelled by

---

[5] Father reaffirmed this intent in his brief in opposition to Mother's preliminary objections, in which he argued that the court should not dismiss the petition under section 5511, as Father "reluctantly brought this [p]etition because of his deep love for [N.J.B.] and **his desire to maintain the relationship** that he and [N.J.B.] had for 24 years."  Brief in Opposition to Preliminary Objections, 11/14/22, at 5 (emphasis added).

court order to visit parent against her will). As such, a custody order dating from N.J.B.'s childhood is simply irrelevant to a guardianship proceeding instituted during her majority. **See** 23 Pa.C.S.A. 5302 (defining child for purposes of custody matters as "[a]ny unemancipated person under 18 years of age"); 20 Pa.C.S.A. § 5501 (limiting definition of incapacitated person to adults). **See also Estate of Haertsch**, 609 A.2d 1384, 1386 (Pa. Super. 1992) ("A case to declare an adult individual mentally [incapacitated] is not equivalent to a case to determine custody of a minor child."). Accordingly, Mother's purported interference[6] with Father's "periods of custody" is of no moment, as Father is not legally entitled to custodial time with his adult daughter.

We echo the sentiments expressed by the Orphans' Court in its order, in which the court stated that it was "sympathetic to the obvious desire of [Father] to continue a relationship with his daughter amid the apparent family discord between [Father] and [Mother.]" Order, 1/13/23, at 4. However, as the court correctly noted, guardianship proceedings are "simply not the appropriate venue for this conflict." **Id.** Accordingly, because the Orphans' Court properly concluded that Father did not institute these guardianship proceedings to aid or benefit N.J.B. and that his petition was legally

---

[6] We note that Father fails to cite to any precedential case law supporting his assertion that Mother's alleged "undue influence" is material to guardianship proceedings under Chapter 55 of the PEF Code.

insufficient, *see* 20 Pa.C.S.A. § 5511(a), we affirm the court's order dismissing the petition.[7]

Order affirmed.[8]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2023

---

[7] We acknowledge the legal limbo in which Father finds himself, having no recourse either through the custody laws or those governing guardianships. We also commend the learned Orphans' Court for recognizing that a guardianship proceeding is not the proper venue for what appears to be, essentially, a disagreement between parents. Indeed, there was no allegation that N.J.B.'s medical and other needs are not being met. We are mindful, however, that this is an issue which is not moot, as there are hundreds, if not thousands, of adult individuals throughout the Commonwealth who, because of either mental or physical disabilities, may find themselves before the court as a result of similar family disputes. No court can order a *sui juris* adult to maintain a social relationship with anyone she does not wish to associate with. However, here, because of the procedural posture of this case, neither we nor the Orphans' Court can know what N.J.B.'s true preferences are. Accordingly, we urge both the legislature and the Orphans' Court Rules Committee to consider addressing this area, particularly in light of some of the advances in the Elder Law area, which may be analogous. It seems that the Orphans' Court, in the exercise of its equitable and ancillary powers pursuant to Section 712 of the PEF Code, may be the most appropriate venue for such cases to be heard.

[8] Because we conclude that Father's petition, as filed, was legally insufficient and that the Orphans' Court properly found that the petition was not filed to aid or benefit N.J.B., we need not address Father's second issue on appeal.